Good morning, your honors. May it please the court, counsel. My name is Nate Nieman and I represent the defendant appellant Kevin Green. This case raises some interesting questions that arrive at the intersection between law and technology, as many child pornography cases nowadays do. However, I do think that despite the somewhat complex nature of the facts here, that the dispute and issues before the court here can be resolved with existing legal principles. The first thing that I wanted to talk about, and I don't know if I'll get to my sentencing issues, but I think that with the court's permission, I'd like to talk about the motion to suppress issue. Specifically with respect to the search warrant. So, as I indicated, the facts are a little bit complex and I won't go into those for that reason. But the basis of our objection to the search warrant being granted is essentially that the search warrant was based on the investigating officer's suspicion. As opposed to evidence that a crime had actually been committed or that there would be evidence of a crime found in the house that was related to the investigation that the officer performed. Namely, the probable cause that the magistrate judge relied on in granting the search warrant was essentially these conversations that occurred between this gentleman in Florida and somebody having a screen name that was later tied to an IP address, that was later tied to the house, that was later tied to the defendant. Of course, we don't know whether that was the defendant himself that was exchanging messages with the individual in Florida, but that's not relevant to the discussion here. So, essentially, Detective McMillan is saying, well, there's evidence that this individual having some fun, 67, has exchanged child pornography with Mr. Abney down in Florida through the Kik app. But if you look at the specific language that he's using, where he's talking about having some fun, 67's expression of a desire to obtain child pornography from Mr. Abney, a desire to produce child pornography of his own children and exchange that or distribute that to Mr. Abney. It doesn't mesh with somebody who has actually traded the child pornography with Mr. Abney. A desire expresses a future intent to do something as opposed to an indication that something has occurred in the past. What about the Disney reference, that there was a Disney film or a kid watching a Disney film and there was a reference to a specific picture that might have been traded? Am I wrong about that? Well, I believe that there was an exchange where he had said something to the effect of the girl or I don't remember if it was a girl or a boy that was watching the Disney was hot. Hot, that's it. Something like that. And I don't know whether that could be an acknowledgement that it's taken out of context is the problem with a lot of the excerpts of the conversation. And a lot of what the detective conveyed to the court is just an assumption that these things had taken place. But there wasn't any evidence that the child pornography had actually been exchanged. And while it's inappropriate to look back on what was found after the search warrant was executed to see if the probable cause was valid. They, in fact, didn't find any child pornography that could be linked to Mr. Abney. It's possible that the child pornography came from other sources. It's possible that it came from Mr. Abney. But there's no evidence that, in fact, that was the case. Are the exchanges about sexually abusing children while girlfriends gone? I'm paraphrasing. How does that play into this? Because that was definitely before the search warrant. That's correct. I think that even if that was true, I think that that raises some other issues, which I think that even let's assume for a moment that there is, in fact, that that was, in fact, the case. And that that would, in fact, establish probable cause. It's still, there still has to be a nexus between the place to be searched and the crime or evidence of crime that they made. But when it says in the absence, it means absence from the home? You see how I was thinking about that? I'm not entirely. I thought that your client said in exchanges with the man that he described how he was sexually abusing the children in his girlfriend's absence. I have a paraphrase of it here. Is that correct or incorrect? You can tell me. I'm saying, assuming that that's correct, then it still doesn't change the fact that the search warrant doesn't establish a nexus between the home and the criminal activity. Proceed. And with that, on that point, the search warrant also fails the particularity requirement. The search warrant, which was contained as an exhibit in the motion to dismiss, that's the court order that's executable, that allows the officers to actually search the property. And I think that one of the interesting things about this search warrant is that it has these two sections. I guess I'll call it paragraph one and paragraph two. And paragraph one identifies, it makes reference to attachment A, which is what the property is that is to be searched. And then in paragraph two, it makes reference to attachment B, which are the things to be seized during the search warrant. And our position is that if the search warrant was to allow the search of the things to be seized that were in the house, that that should have been included in the first paragraph. So it should have said, see attachment A and B, because that would have been broad enough to not only encompass the house, but all the things within it. So I see that my time is up, and I would respectfully- And you reserve the rest. The rest for rebuttal. Sure. Thank you. Ms. Schneider. Thank you, your honor. May it please the court. My name is Tori Schneider, and I represent the government. There is sufficient probable cause evidence in the application for the warrant supporting probable cause. Judge Strass, as you indicated, yes, there were these statements regarding watching Disney videos stating that one was hot. That clearly showed that both Appellant and Abney in Florida had both viewed the same video or photo. And then there was, directly after that, a request for additional child pornography to be sent. And that statement was from Abney, correct? The kid lover one was Abney, is that right? Yes, your honor. And so there's two things, that they may have both viewed it, but it's also possible that Green had actually sent that video, too. I mean, if you read it, that's an inference that could reasonably be made by the magistrate, correct? Yes, your honor. Okay. And that is sufficient, and as your honor has just noted, reasonable inferences can be drawn by both law enforcement and the issuing magistrate. There was sufficient evidence noted, both with those chat logs, and the fact that there wasn't any child pornography attached to those chat logs at the time that the search of Abney's devices in Florida had occurred, does not negate the probable cause in this warrant. And in fact, Judge Benton, as you were discussing the fact that there were also these perhaps allegations, or the, as counsel notes, desires to perhaps sexually assault his own children and make, quote, porn with the children if his girlfriend remained at work all night, there was the concern of production. And so the request, or this warrant was obtained four weeks after the warrant was executed in Florida. There was certainly a concern and an urgency due to the statement that there may be production and sexual assault going on. And that, to Judge Benton, your comment regarding Nexus, the comment was, if my girlfriend works all night, he may make porn with the kids. That would then, yes, suggest that that would happen in the home, referencing all night. Additionally, a cell phone or computers, because at the time law enforcement was seeking this warrant, they don't know on whether these communications were occurring on a desktop computer, a laptop, or a cell phone. But even that it was a cell phone, counsel argues in his brief that cell phones are mobile. But cell phones are not independently mobile. A cell phone, it would be generally with the person who owns the cell phone. And this warrant was executed at 6 o'clock in the morning. It is therefore reasonable to believe it would be at the residence with the person. So that does not negate Nexus to the home. Especially considering the fact that the IP address associated with these kick messages was associated with that residence. There is definitely sufficient Nexus to that residence in this search warrant application. Regarding the particularity issue, although the cell phone was not noted as a thing to be searched, it was very clear in the warrant application that computers were going to be searched. In fact, the application itself outlined a methodology for searching the electronics that law enforcement hoped to find. And in Attachment B, a computer was defined to include cell phones. If there are no further questions on the search warrant issue, the last thing I would like to point out is that regarding the appellant's statement, that issue that was raised, I believe that appellant misstates the record in his brief on page 31. In stating that law enforcement did not advise appellant that he was not under arrest, was not free to leave or answer questions. I would like the court to be aware that Exhibit 1 was admitted as evidence at the motion to suppress hearing, which was the recording of the interview of that exhibit. During that recording, law enforcement clearly stated to appellant, you are not under arrest, you do not have to answer questions, and you are free to leave. Unless you want to drink water from the house. Unless you want to go into the house. You can't do that. You cannot. Counsel, could you address the computer use enhancement and the standing of Mr. Green to make that constitutional challenge? Yes, your honor. I guess I had considered it from a standing perspective. Because it was applied to him, I guess I would assume he has standing to challenge it. However, this court is bound by the precedent of Beckles and Kramer, and so I don't know how that enhancement would not apply. But I guess I'm not sure what you mean by standing because it was applied to him. Well, his specific conduct seems to be clearly within it, clearly prescribed, and so would he have standing to make the challenge to the constitutionality of 1030E1? Thank you, your honor. Under that note, I guess I don't think he would have standing because I don't know that he would be allowed to make an as-applied challenge. Is that what you're referring to? You've answered my question. Yes, thank you. I would respectfully request that this court affirm the district court. Thank you, Ms. Schneider. Mr. Nieman, we're back to you. Thank you, your honor. With respect to the government's argument that the search warrant was essentially to be read with the application, the Groh case that I cited, the Supreme Court case from 2004, indicates that the fact that the application adequately described the things to be seized does not save the warrant from its facial invalidity. So I understand that the warrant and the application must be read together and that they would in fact be read together, but ultimately it's the warrant that is the order and not the application. And I described a situation in my brief where a magistrate looking at the application could say, no, I think that the place to be searched that you're seeking to search, that's too broad. I would narrow that to a certain area or I would narrow the things to be seized. And so I know that as a practical matter that the search warrant order is essentially typed up and brought to the magistrate at the time that the application is brought to him or her. But ultimately it's the magistrate that decides what can be searched. And if the language in the search warrant limits the place to be searched, then it limits the place to be searched. And if you have to look to the application to understand the limitations of the search warrant, then that's going beyond the actual search warrant. And that's going to be very difficult for law enforcement to follow. So with that said, we would ask this court to respectfully reverse the defendant's conviction and sentence and remand for a new trial. Thank you both for your argument. Thank you, Mr. Neiman, for your service under the CJA. And Mr. Call, would you please tell Mr. Smith, I forgot to say that to him, we alluded to it, and I'll deputize you to do that. Please tell Mr. Smith we said that in open court. And case number 19-1327 is submitted for decision by the court.